DISCIPLINARY COUNSEL *v.* HILBURN.

[Cite as *Disciplinary Counsel v. Hilburn,* **135 Ohio St.3d 1, 2012-Ohio-5528.**]

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failure to act with reasonable diligence in representing a client, engaging in conduct prejudicial to the administration of justice, and failure to cooperate in multiple disciplinary investigations—Eighteen-month suspension, 12 months stayed on conditions.*

(No. 2012-0678—Submitted June 6, 2012—Decided December 3, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 11-033.

_____

**Per Curiam.**

{¶ 1}  On April 11, 2011, relator, Disciplinary Counsel, filed a five-count complaint against Regina Lynn Hilburn, Attorney Registration No. 0056085, for violating the Rules of Professional Conduct.  Counts I through IV detail violations of the Rules of Professional Conduct in the nature of neglect of client matters, lack of responsiveness to client requests for information and documents, and conduct prejudicial to the administration of justice.  Additionally, there was one charge of dishonest conduct involving misrepresentation to a court.  Court V asserted Hilburn's initial failure to cooperate with the disciplinary investigation.

{¶ 2}  Relator and Hilburn stipulated to the facts, the violations, and the documents relating to each count.  Relator also agreed to withdraw several charges of violating certain rules.  Those allegations are dismissed.  Also stipulated were aggravating and mitigating factors, along with a proposed sanction of 18 months with 12 months stayed on conditions.  The panel found the

violations and the aggravating and mitigating factors as stipulated and adopted the stipulated sanction. We agree.

**Stipulated Misconduct, Aggravation, and Mitigation**

{¶ 3} Respondent, Regina Hilburn, was admitted to the practice of law in 1991 and, at the time of the hearing, was a 46-year-old attorney who focused her practice on domestic matters.

*1. Count I: The Barber matter*

{¶ 4} Beginning in January 2009, Hilburn represented Michelle Barber in a parentage and custody matter in the Franklin County Common Pleas Court. In February 2009, the opposing party in the case filed a motion for summary judgment. Although Hilburn did file a motion for an extension of time, and did receive additional time, she never filed a response to the summary-judgment motion. In April 2009, the court granted partial relief, on the parentage issue, against Hilburn's client. Hilburn moved for leave to file a responsive memorandum, was granted leave, and filed the memorandum, but the court affirmed its granting of partial summary judgment.

{¶ 5} In August 2009, Hilburn represented Barber during a four-day trial on the remaining issue of custody. The representation continued until the court issued its judgment adverse to Barber on October 2, 2009. On October 22, Barber requested an accounting of the work completed on her behalf and a refund of the unearned retainer. Hilburn did not respond to the request.

{¶ 6} Hilburn stipulated that her conduct in the Barber matter violated Prof.Cond.R. 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client) and 1.4(a)(4) (a lawyer shall comply as soon as practicable with reasonable requests for information from the client). The panel and the board found by clear and convincing evidence that Hilburn violated the Rules of Professional Conduct as stipulated, and we agree.

### 2. Count II: The Mabry matter

{¶ 7} Hilburn was hired by the Mabrys in October 2009 to assist them with an adoption case in Auglaize County. At the outset, they paid Hilburn a retainer of $3,000. Hilburn then prepared petitions for adoption for each of Mr. Mabry's two stepchildren, and also obtained his signatures, but she did not file the petitions.

{¶ 8} On February 12, 2010, the Mabrys contacted the court regarding the adoption cases and inquired about a date for their hearing. The Mabrys informed the clerk that Hilburn had told them of a hearing scheduled for February 4, 2010, that had been continued because the judge was ill. The clerk advised the Mabrys that no adoption had been filed, attempted unsuccessfully to contact Hilburn, and suggested that the Mabrys should do so as well. At that time, no adoption had been filed, no hearing had been scheduled, and the judge was not ill.

{¶ 9} On February 16, 2010, Hilburn filed the adoption petitions.

{¶ 10} On February 18, 2010, Judge Spees of the Auglaize County Court of Common Pleas, Probate Division, issued an order requiring Hilburn to appear on March 8, 2010, and show cause why she should not be held in contempt for her conduct in representing the Mabrys. At the March 8 hearing, Hilburn stated that when she had spoken to the Mabrys about a court hearing, she believed that the adoption papers had been filed. Hilburn also explained that she had recently been diagnosed as a Type II diabetic and that for some months she had had difficulty thinking clearly. At the conclusion of the hearing, Judge Spees found that Hilburn was in contempt and fined her $100. Additionally, because of serious concerns about other clients of Hilburn's, the judge indicated that he would forward the transcript of the hearing to the disciplinary counsel's office. Hilburn then stated to the court:

> I'm already in contact with OLAP [Ohio Lawyers Assistance Program]. You don't have to send it to Disciplinary Counsel. I've already—I realize I made a mistake. I already contacted OLAP and requested their help.

Contrary to Hilburn's representation, she had not requested help from the Ohio Lawyers Assistance Program ("OLAP") prior to the March 8, 2010 hearing.

{¶ 11} The adoption of the Mabry stepchildren was finalized on August 27, 2010, and Hilburn timely paid the $100 fine for contempt of the court.

{¶ 12} With respect to the Mabry matter, Hilburn agreed that she had violated Prof.Cond.R. 1.3, 8.4(c) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), and 8.4(h) (a lawyer shall not engage in conduct that adversely reflects on the lawyer's fitness to practice law). The panel and the board found by clear and convincing evidence that Hilburn violated the Rules of Professional Conduct as stipulated, and we agree.

### 3. Count III: The Issa matter

{¶ 13} On April 30, 2008, Abdi Issa retained Hilburn to represent him in a civil matter arising out of a property dispute. Issa paid Hilburn $800 as a retainer along with $300 for filing fees on May 2. On July 16, 2008, Hilburn filed a civil complaint for conversion, replevin, trespass, and other relief in the Franklin County Court of Common Pleas. The defendants filed an answer and counterclaim along with a motion to dismiss on August 21, 2008. Although Hilburn prepared an answer to the counterclaim and a response to the motion to dismiss, she failed to file either of them.

{¶ 14} On October 17, 2008, defendants moved for default against Hilburn's client on the counterclaim. A hearing on the default motion was set for October 21, 2009, but was later continued.

{¶ 15} On January 4, 2010, Hilburn entered into a stipulation with the defendants to dismiss the matter. Hilburn did not inform Issa of the dismissal or obtain his authorization to dismiss. Hilburn failed to respond to numerous telephone messages from Issa regarding the case and failed to update Issa on the progress of the case.

{¶ 16} With respect to Issa, Hilburn stipulated to violations of Prof.Cond.R. 1.3, 1.4(a)(2) (a lawyer shall reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (a lawyer shall keep the client reasonably informed about the status of the matter), 1.4(a)(4), and 8.4(d). The panel and the board found by clear and convincing evidence that Hilburn violated the Rules of Professional Conduct as stipulated, and we agree.

### 4. Count IV: The Tribune matter

{¶ 17} On or about August 8, 2007, Jonathan Tribune retained Hilburn to represent him in a parentage and custody matter and paid her $1,100 in fees. On November 13, 2007, Hilburn filed a complaint to establish a parent-child relationship on Tribune's behalf in the Franklin County Court of Common Pleas, Domestic Relations Division.

{¶ 18} Hilburn filed an amended complaint on March 6, 2009, and a motion for parenting time on March 24, 2009. On July 21, 2009, Hilburn filed a motion for contempt on Tribune's behalf. On October 20, 2009, the parties resolved the outstanding issues and settled the case, preparing and executing a memorandum of agreement that set forth the terms of the settlement and required Hilburn to submit an appropriate judgment entry by November 20, 2009. On January 11, 2010, the court dismissed Tribune's case because Hilburn had failed

to file a judgment entry or request an extension of time to do so. The court notified Hilburn of the dismissal, but she never informed Tribune that the case had been dismissed.

{¶ 19} From October 2009 through April 2010, when he obtained new counsel, Tribune attempted to contact Hilburn about the status of the case. Hilburn did not return his calls. When he obtained new counsel in April 2010, Tribune learned for the first time that the case had been dismissed in January 2010.

{¶ 20} Hilburn stipulated that her conduct in the Tribune matter violated Prof.Cond.R. 1.3, 1.4(a)(4), and 8.4(d). The panel and the board found by clear and convincing evidence that Hilburn violated the Rules of Professional Conduct as stipulated, and we agree.

*5. Count V: Failure to cooperate*

{¶ 21} From January 11, 2010, through December 1, 2010, disciplinary counsel forwarded six letters of inquiry to Hilburn relating to the Barber, Mabry, Issa, or Tribune matters. Those letters were sent by certified mail to the address Hilburn had provided to the Office of Attorney Registration—118 E. Main Street, Suite 204, Columbus, Ohio 43215. Although Hilburn received each of the letters sent to her, she timely responded only to the first letter regarding the Barber matter. The following outline details Hilburn's lack of cooperation with disciplinary counsel's investigation:

- April 8, 2010: Disciplinary counsel requested additional information relating to Barber's grievance. Hilburn provided the information only after relator issued a subpoena requiring her appearance in disciplinary counsel's office on June 9, 2010.
- May 18, 2010: Disciplinary counsel's investigator personally served on Hilburn a subpoena duces tecum relating to the Barber

6

and Mabry matters. The subpoena required Hilburn's appearance at relator's office on June 9, 2010. Hilburn sent a facsimile transmission on June 8, 2010, at 7:14 p.m., responding to relator's request for additional information in the Barber matter as well as to its letter of inquiry in the Mabry matter.

• June 17, 2010: Disciplinary counsel wrote to Hilburn requesting additional information arising out of her response to the letter of inquiry relating to the Mabry matter. Hilburn did not reply to relator's letter.

• August 19, 2010: Disciplinary counsel served on Hilburn, by certified mail, a subpoena duces tecum relating to the Issa and Barber matters, which required Hilburn's appearance in relator's office on September 16, 2010.

• On September 15, 2010, Hilburn forwarded, by facsimile, a partial response to relator's letter of inquiry in the Issa matter. In her letter, Hilburn indicated that she was providing her OLAP contract, which had been entered into on July 6, 2010, and that she was seeking counsel to assist her with relator's investigation. At that time, counsel for relator spoke with Hilburn and indicated that she would continue the deposition for two weeks to allow Hilburn to obtain counsel.

• September 20, 2010: Disciplinary counsel served a subpoena duces tecum by certified mail relating to the Issa and Barber matters, which required Hilburn's appearance in relator's office on September 30, 2010.

• September 29, 2010: Hilburn forwarded, by facsimile, a request to continue the September 30 deposition because she had not yet

obtained counsel to represent her. Upon receipt of Hilburn's request, counsel for relator spoke with Hilburn, who assured relator that she would provide the information relator was requesting by October 29, 2010. Despite Hilburn's promise, she did not provide relator with any additional information.

• November 22, 2010: Disciplinary counsel's investigator personally served a subpoena duces tecum upon Hilburn by giving the subpoena to her roommate at her residential address. The subpoena required Hilburn's appearance at relator's office on December 13, 2010.

• December 10, 2010: Hilburn again wrote to disciplinary counsel, explaining that for financial reasons, she had not yet obtained counsel to assist her. Although Hilburn indicated a willingness to appear on December 13, 2010, disciplinary counsel contacted her and advised that the matter would be continued in order to permit Hilburn time to obtain counsel. Relator advised Hilburn that her written response to all outstanding issues needed to be received by December 31, 2010; relator did not receive anything from Hilburn by December 31, 2010.

• January 6, 2011: Disciplinary counsel requested additional information relating to each of his investigations against Hilburn. The request advised Hilburn of relator's intent to file a formal complaint against her should she not respond to the request. Hilburn did not provide the requested materials.

{¶ 22} Hilburn admits that her conduct as asserted in Count V violated Prof.Cond.R. 8.1(b) (a lawyer shall not, upon receiving a demand for information from a disciplinary authority, knowingly fail to respond) and Gov.Bar R. V(4)(G)

(no lawyer shall neglect or refuse to assist or testify in an investigation or hearing).

**{¶ 23}** The panel and the board found by clear and convincing evidence that Hilburn violated the Rules of Professional Conduct and the Rules for the Government of the Bar as stipulated, and we agree.

### 6. *Stipulated aggravating and mitigating factors*

**{¶ 24}** The parties stipulated that the following aggravating factors exist:

- A pattern of misconduct, *see* BCGD Proc.Reg. 10(B)(1)(c).
- Multiple offenses, *see* BCGD Proc.Reg. 10(B)(1)(d).
- A lack of cooperation in the disciplinary process, *see* BCGD Proc.Reg. 10(B)(1)(e).

**{¶ 25}** As for mitigating factors, the parties stipulated that the following exist:

- Absence of a prior disciplinary record, *see* BCGD Proc.Reg. 10(B)(2)(a).
- Lack of a selfish or dishonest motive, *see* BCGD Proc.Reg. 10(B)(2)(b).
- Presence of a documented mental disability, *see* BCGD Proc.Reg. 10(B)(2)(g).

**{¶ 26}** The subject of Hilburn's mental disability calls for additional discussion. BCGD Proc.Reg. 10(B)(2)(g) provides that the board may consider a "mental disability" as a mitigating factor when the following has been shown:

(i) A diagnosis of a chemical dependency or mental disability by a qualified health care professional or alcohol/substance abuse counselor;

(ii) A determination that the chemical dependency or mental disability contributed to cause the misconduct;

(iii) In the event of chemical dependency, a certification of successful completion of an approved treatment program or in the event of mental disability, a sustained period of successful treatment;

(iv) A prognosis from a qualified health care professional or alcohol/substance abuse counselor that the attorney will be able to return to competent, ethical professional practice under specified conditions.

{¶ 27} In support of their stipulation that Hilburn's mental disability should be considered as a mitigating factor, the parties presented her OLAP contract. Stephanie Krznarich, a licensed independent social worker employed by OLAP, signed the contract and also testified at the November 10, 2011 hearing.

{¶ 28} Krznarich is also a licensed chemical-dependency counselor and has bachelor's and master's degrees in social work from Ohio State University. She testified that Hilburn was struggling with depression and thoughts of suicide when she came to OLAP. Krznarich has taken at least one-third of the 150 telephone calls from Hilburn to OLAP. She stated that Hilburn has had a positive outcome and agreed with Linda Ambrose, Hilburn's certified nurse practitioner, who had stated that "with continued treatment, including continued commitment to the Ohio Lawyers Assistance Program, Ms. Hilburn can continue to function in an appropriate level in order to continue the practice of law in a competent and ethical manner." Krznarich further testified that she agreed with Ambrose's

report, which links Hilburn's depression to the underlying misconduct set forth in the agreed stipulations.

{¶ 29} A November 1, 2011 letter from Ambrose, Hilburn's treating health-care professional, was admitted by stipulation. It states that Ambrose has been a licensed certified nurse practitioner in Ohio for approximately ten years and has treated patients with mental-health issues, including depression. Ambrose is licensed to prescribe medications and make diagnoses and prognoses with respect to medical and mental-health conditions. She has provided care and treatment to Hilburn since February 2010 for diabetes and since July 2010 for depression. Ambrose opined that in her "professional opinion with a reasonable degree of certainty [Hilburn's] depression rendered her unable to function at a professional level, and contributed to cause the misconduct as set forth in the Agreed Stipulations." Ambrose also opined that Hilburn "sought appropriate medical care and has experienced a sustained period of successful treatment."

{¶ 30} The panel questioned whether the opinions of a certified nurse practitioner can support a finding of mental disability as a mitigating factor. To address this issue, relator and Hilburn filed an agreed stipulation with the board on November 15, 2011. The agreed stipulation refers to R.C. 4723.43(C) for support of the proposition that a certified nurse practitioner may provide an opinion on mental disability. That section explicitly authorizes a certified nurse practitioner, when working "in collaboration with one or more physicians," to "provide preventive and primary care services" as well as "evaluate and promote patient wellness within the nurse's nursing specialty."

{¶ 31} In this case, Ambrose's collaboration with Jeannine Hughes, M.D., who works in the same medical practice with Ambrose, and her diagnosis of Hilburn were documented by (1) a February 9, 2012 stipulation to the authenticity of an attached letter from Ms. Ambrose, that establishes that Hilburn was diagnosed with "recurrent depression" in June 2010, (2) a medical record attached

to the stipulation indicating that Hilburn has a medical history of depression, and (3) an April 12, 2012 stipulation to the authenticity of an attached letter from Ambrose stating that Hilburn was diagnosed with depression by Dr. Hughes on March 21, 2007, and that Ambrose assumed treatment of Hilburn's mental disability, in collaboration with Dr. Hughes, on June 25, 2010.

{¶ 32} We agree with the panel and the board that the association of Ambrose with Dr. Hughes in the same medical practice and their successive rendition of medical- and health-related services to Hilburn satisfy the collaboration requirement of R.C. 4723.43(C) for purposes of applying BCGD Proc.Reg. 10(B)(2)(g) under the circumstances of this case. Moreover, we agree that the record, in light of R.C. 4723.43(C), establishes Ambrose's competency to give a professional opinion in support of a finding of mental disability as a mitigating factor under BCGD Proc.Reg. 10(B)(2)(g). Of particular significance is Ambrose's November 1, 2011 letter stating that she is experienced in treating patients with mental-health issues, including depression, can make diagnoses and prognoses with respect to mental-health conditions, and has been treating Hilburn for depression since July 2010.

{¶ 33} Accordingly, Hilburn's mental disability is a mitigating factor that may be considered in favor of a less severe sanction.

### Disposition

{¶ 34} The parties proposed an agreed sanction of 18 months' suspension from the practice of law, with 12 months stayed on conditions. The panel and the board have adopted that sanction, and we agree.

{¶ 35} Hilburn is therefore suspended from the practice of law for 18 months from the date of this decision, with the final 12 months of the suspension stayed on the following conditions: (1) Hilburn shall remain in compliance with her OLAP contract and the treatment recommendations of her mental-health professionals, (2) upon Hilburn's reinstatement, Hilburn shall serve a period of

monitored probation in accordance with Gov.Bar R. V(9) for the stayed portion of the suspension, and Hilburn shall fully cooperate with the monitoring attorney in accordance with that rule, and (3) Hilburn shall not engage in any further misconduct. If Hilburn fails to comply with the conditions of the stay, the stay shall be lifted, and she shall serve the full 18-month suspension. Additionally, Hilburn's reinstatement is conditioned upon the certification of a qualified psychiatrist that she is able to return to the competent, ethical, and professional practice of law.

### Conclusion

{¶ 36} For all the foregoing reasons, we adopt the findings and conclusions of the board, and we impose the recommended sanction of an 18-month suspension with 12 months stayed on the conditions set forth above. If Hilburn violates any of the conditions, the stay shall be lifted and Hilburn shall serve the full 18-month suspension. Costs are taxed to Hilburn.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Jonathan E. Coughlan, Disciplinary Counsel, and Stacy Beckman, Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter and Christopher Weber, for respondent.

_____